[Civ. No. 37319. Second Dist., Div. Two. Nov. 24, 1970.]

ALLEN V. C. DAVIS et al., Plaintiffs and Respondents, v.
CUSTOM COMPONENT SWITCHES, INC., et al.,
Defendants and Appellants.

[Civ. Nos. 37318, 37346, 37391. Second Dist., Div. Two. Nov. 24, 1970.]

THOMAS C. MAY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ALLEN V. C. DAVIS et al., Real Parties in Interest.

22

*Assigned by the Chairman of the Judicial Council.

## COUNSEL

Beardsley, Hufstedler & Kemble, Charles E. Beardsley, Seth M. Hufstedler, Jerome H. Craig, Monteleone & McCrory, Wilmer E. Winaham, O'Melveny & Myers, Philip F. Westbrook, Jr., and B. Boyd Hight, Jr., for Defendants and Appellants and for Petitioners.

No appearance for Respondent.

Hillel Chodos and Kurt J. Lewin for Plaintiffs and Respondents and for Real Parties in Interest.

## OPINION

**FLEMING, Acting P. J.**—These are petitions which seek writs of supersedeas, mandate, prohibition, and temporary restraining orders.

On 28 September 1970 judgment was entered in favor of plaintiff Davis against Custom Component Switches, Inc. (Custom) for approximately $3,500,000 and in favor of Davis against defendants Goodson and Hannam for approximately $1,200,000. The judgment also directed that approximately 61 percent of the shares of Custom standing in the names of Goodson and Hannam be awarded to Davis.

It appears that in 1956 plaintiff Davis was the owner of three inventions on which patent applications were pending, and he was engaged in manufacturing devices relating to these inventions, doing business in corporate form as Hydra-Electric. In 1957 a plan was devised by Goodson and Hannam, attorneys and certified public accountants, for Davis to transfer a half interest in the pending patents and a half interest in the manufacturing business to a separate corporate entity in order to secure tax advantages to Davis and in order to create an ostensible second source of supply for Davis' products and thereby forestall renegotiation claims by the government. The separate corporate entity would compensate Davis for the transfer of property and business by the payment of royalties. The controlling interest in the new business would be held in the names of Goodson and Hannam, and a third party, May, would be brought into the new business as a supplier of capital and minority shareholder. The plan contemplated the use of Goodson and Hannam as dummy shareholders to hold the controlling interest in the business for Davis pursuant to an oral agreement under which they would transfer the shares and controlling interest in the business to Davis on request or make such changes in the form of the business as he should direct.

Pursuant to this plan Davis in 1957 transferred a half interest in his patent applications and business and half his pending orders and contracts to a separate entity—Custom—in which he had no legal ownership and which on the surface was operated as an independent competitive entity obligated to pay 65 percent of its net profits to Davis as royalties. The reason for the transfer was to secure favorable tax benefits for Davis and a favorable renegotiation posture for Davis in his dealings with the government. (Although the findings do not spell out this feature of the case in detail, it appears that an ostensibly competitive second source of supply was created for products sold by Davis to the government and the beneficial ownership by Davis of the ostensibly competitive second source of supply was concealed from the government to forestall a government claim of a

single source of supply and consequent renegotiation of the prices paid by the government to Davis for his products.) The new business prospered, and for over eight years Goodson and Hannam remained in charge. During this period Custom paid Davis royalties approximating $3,400,000. In 1965 Davis asked Goodson and Hannam to transfer the controlling shares back to him pursuant to their oral promise to do so. They refused, and this suit followed.

This cause thus involves a claim by the beneficial owner of shares held by dummy shareholders for a transfer of the shares to him pursuant to oral agreement. Sixty-one percent of the shares are involved, and at all times these shares amounted to a controlling interest in Custom. May, the outside investor, holds approximately 30 percent of the shares, and four employee-shareholders hold a total of 9 percent of the shares. On the trial of the cause the court found that Davis was entitled to the 61 percent of the shares standing in the name of Goodson and Hannam and found that the latter had acquired these shares by fraud. The court also found that the minority shareholders—May and the four employees—who in total held 39 percent of the shares, were not involved in the fraud through which Goodson and Hannam acquired their shares, and that the minority shareholders had acquired their ownership interest in Custom without notice of Davis' claims. The court directed the transfer to Davis of the shares standing in the names of Goodson and Hannam. (Additionally, the court entered judgment in favor of Davis against Goodson and Hannam for $1,200,000, but this aspect of the judgment is not involved in the present petitions.) The court also entered judgment in favor of Davis against Custom for $3,500,000, a judgment based on royalties which the court found were owed to Davis under the terms of the original transfer. The extent and amount of those royalties is a principal subject of the appeal which has been taken by minority shareholders to contest the validity and amount of the money judgment against Custom.

Subsequent to the entry of judgment in the trial court Davis collected approximately $1,800,000 from Custom ($1,500,000 which had been held by the court pending the outcome of the suit, and $300,000 in certificates of deposit belonging to Custom on which he levied execution), and execution of the judgment on these sums is not in dispute. But Davis also sought to levy execution on, and conduct a sale of, the entire assets and business of Custom in order to collect the remaining $1,700,000 due him on his judgment. Defendants have applied for various extraordinary writs to stay levy of execution by Davis on the assets and business of Custom, and this court has heretofore issued a temporary stay of execution pending hearing and determination of the petitions for provisional relief.

Subsequent to our issuance of a temporary stay of execution Goodson and Hannam deposited their 61 percent of the shares in Custom with the clerk of the superior court, and thereafter the superior court appointed Kurt J. Lewin, one of the attorneys for Davis, as custodian of these shares. Since these shares comprise the majority interest in Custom, it appears implicit from the appointment that the superior court thereby authorized Lewin to assume control over the affairs of the corporation. Defendants have challenged the appointment of Lewin as custodian, and they ask this court to vacate the appointment and secure the appointment of a neutral custodian by appropriate writs of prohibition and mandate.

Essentially, the petitions before this court present two questions for resolution pending the disposition of the cause on appeal: (1) whether a writ of supersedeas should issue to stay the enforcement of the balance of the money judgment against Custom; (2) whether Lewin should continue as custodian of 61 percent of Custom's shares and, by implication, as the officer responsible for the preservation, management, and control of the principal subject matter of the lawsuit during the pendency of the appeal.

*Stay of Balance of Money Judgment Against Custom*

Of Davis' judgment for $3,500,000 against Custom, $1,800,000 has been paid and $1,700,000 remains unpaid. To collect the balance of his judgment Davis has sought to levy a writ of execution against the assets and business of Custom and to cause them to be sold to satisfy his judgment. It appears obvious that in the absence of a stay of execution on the unpaid balance of Davis' money judgment against Custom, Davis will pursue his writ of execution and force a sale of the assets and business of Custom to satisfy the unpaid balance of $1,700,000 on his judgment. Execution and forced sale of the business and assets of Custom for this amount would in all probability leave the minority shareholders (May 30 percent, employee-shareholders 9 percent) with an interest in a corporate entity which was nothing more than an empty shell. Normally, a stay of execution on a money judgment requires a bond for double the amount of the judgment. (Code Civ. Proc., § 917.1.) It seems agreed by all parties that Custom could not put up a bond of $3,400,000 (twice the unpaid balance of $1,700,000) or even a corporate surety bond of $2,550,000 (one and one-half times the unpaid balance). This court, however, has the power to stay proceedings during the pendency of an appeal by writ of supersedeas in order to preserve the status quo in aid of its jurisdiction and ensure that the subject matter of the appeal is still in existence at the time the appeal is decided. On the facts presented here it seems clear that unless this court issues a writ of supersedeas the business and assets of Custom will be taken over by Davis to satisfy execution on his judgment and the minority share-

holders will be permanently separated from any interest in the business and assets of Custom.

Plaintiff argues that this court should furnish no provisional relief to the minority shareholders, because the minority shareholders were closely associated with Goodson and Hannam, the trial court found Goodson and Hannam guilty of fraud, and by reason of the minority shareholders' close association with Goodson and Hannam they do not deserve special consideration from this court. In effect he argues a form of guilt by association. This argument ignores the basic fact that the principal controversy lies between two claimants to the controlling shares of Custom, Davis on the one hand, and Goodson and Hannam on the other. From the findings it appears clear that Goodson and Hannam, as controlling shareholders, dominated and ran the corporation. The trial court made a specific finding that neither May nor the four employee-shareholders participated in Goodson and Hannam's fraud in acquiring shares nor did the minority shareholders acquire their own shares with knowledge of the fraud. Under these circumstances it can no more be argued that May and the employee-shareholders should be penalized for their close association with Goodson and Hannam than it can be argued that Davis should be penalized for *his* close association with Goodson and Hannam. We believe an appropriate claim for a stay pending appeal has been made out, since execution against the assets of Custom would wipe out the minority shareholders in Custom.

Davis argues that this court has no power to stay execution on a money judgment because Code of Civil Procedure section 917.1 provides that execution on a money judgment may only be stayed by an undertaking for double the amount of the unsatisfied judgment, or, if a corporate undertaking, for one and one-half times the amount of the money judgment. Section 917.1 undoubtedly represents the general statutory rule applicable to a stay of execution on a money judgment, but the general rule is subject to a statutory exception which, as codified in section 923 of the Code of Civil Procedure, reads: "The provisions of this chapter [Stay of Execution on Appeal] shall not limit the power of a reviewing court or of a judge thereof to stay proceedings during the pendency of an appeal or to issue a writ of supersedeas or to suspend or modify an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo, the effectiveness of the judgment subsequently to be entered, or otherwise in aid of its jurisdiction."

We consider the existence of minority shareholders whose interest in the business is likely to be wiped out if execution is not stayed an appropriate reason to issue a stay of execution during the pendency of the appeal, if it appears that the appeal presents substantial issues. We have concluded that the appeal does present substantial issues relating to the amount of Davis'

judgment against Custom. We have also concluded that failure to issue a stay is more likely to injure defendants than the issuance of a stay is likely to injure plaintiff.

The writ of supersedeas has the function of preserving a court's jurisdiction while the court rules on the merits of an appeal, and section 923 is specifically designed to accomplish that purpose. (*People* ex rel. *San Francisco Bay etc. Commission* v. *Town of Emeryville,* 69 Cal.2d 533, 538-539 [72 Cal.Rptr. 790, 446 P.2d 790].) The cause of *Julian* v. *Schwartz,* 2 Cal.2d 280 [40 P.2d 818], appears comparable in all essential respects to the cause at bench. There, judgment was entered directing trustees to pay impounded money to the parties and to surrender possession of oil well property, a judgment which was appealed. A bond to stay the order would have been required in the amount of $400,000, an amount which appellants contended was beyond their ability to furnish. The court concluded that a stay of the judgment would not harm the parties pending the appeal, that the properties were being safely and economically operated, and that therefore the writ of supersedeas would issue to stay execution on the judgment pending appeal without the posting of a bond.

Similar factors are present in the cause at bench. Twice the amount of the judgment would require a bond of $3,400,000, and the corporation is not able to furnish such a bond. Yet the corporation is operating profitably. In fiscal 1969 its sales amounted to $6,000,000, and its net income from operations prior to payments to Davis amounted to $985,000. Plaintiff has heretofore collected $1,800,000, more than half his judgment, and he will continue to collect royalties pending appeal. We conclude it is appropriate for this court to issue a writ of supersedeas to stay execution without bond on the $1,700,000 balance of Davis' money judgment against Custom during the pendency of the appeal.

*Custody of Shares*

■ The second principal issue arises from that part of the judgment which requires Goodson and Hannam to transfer their shares in Custom to Davis, shares which amount to 61 percent of the stock and represent the controlling interest in the corporation. Subsequent to the entry of the judgment Goodson and Hannam filed a notice of appeal and deposited their shares with the clerk of the superior court. Thereafter on 13 October 1970 the superior court appointed Lewin custodian of the shares and ordered the shares delivered to him. This order appears to have been taken pursuant to Code of Civil Procedure section 917.2 which authorizes a stay of execution, pending appeal, of a judgment for delivery of personal property, if the property is placed in the custody of an officer designated by the trial court to abide the order of the reviewing court. Defendants, by writs of prohibition

and mandate, seek to vacate the order appointing Lewin custodian of the shares on the ground that he is not eligible to act as custodian.

It is apparent that what is involved is not mere custody of the share certificates but rather control of Custom during the pendency of the appeal. The record indicates that since 16 June 1970 the superior court has assumed control of Custom through an order designating a custodian and directing his manner of operation. It appears probable that the new custodian appointed 13 October 1970 will perform the same duties and exercise the same control over Custom as that heretofore performed and exercised by the former custodian and that he will control the business, operations, and assets of Custom during the pendency of the appeal. It is also apparent from the attempt of Davis to execute on the assets of Custom that he is seeking to obtain the entire business, operations, and assets of Custom, and in that endeavor is pursuing a course of action to further his own interest to the total exclusion of that of the minority shareholders. The issue is whether under these circumstances an attorney for Davis should act as custodian of the shares during the appeal and thereby control the business, operations, and assets of Custom.

The problem has several aspects. First, as previously discussed, we think it appropriate to preserve the status quo during the appeal in order to permit this court to make an effective ruling on appeal. Davis has sought to levy execution on the entire assets of the corporation and wipe out the interest of the minority shareholders. We think preservation of the status quo pending appeal is more likely to occur if Custom remains under neutral control rather than under the control of Davis. We think Custom, to effectuate a meaningful appeal of the judgment entered against it, should have neutral control during the appeal, and not that of its principal judgment creditor whose judgment is being appealed.

Second, a custodian of shares which represent the controlling interest in a corporation has duties and responsibilities closely akin to those of a receiver, i.e, an officer who on behalf of a court takes charge of a business or property during the pendency of litigation. (Code Civ. Proc., §§ 564 to 570.) Section 564, subdivision 4 specifically authorizes the appointment of a receiver after judgment to preserve property during the pendency of an appeal. It is apparent that in certain instances the provision for appointment of a receiver pending appeal (§ 564, subd. 4) overlaps the provision for appointment of a custodian of personal property pending appeal (§ 917.2). One such instance involves the controlling shares of a corporation. When the personal property in the hands of a custodian consists of share certificates which represent a controlling interest in a business, there appears little substantive difference between a custodian of personal property, as appointed herein by the court, and a receiver, who might have been appointed

under Code of Civil Procedure section 564, subd. 4 to take charge of the business of Custom. Nevertheless, no party to this litigation formally sought the appointment of a receiver, while several of them did seek the appointment of a custodian. The superior court designated the officer it appointed as a custodian, both in its order of 16 June 1970 and in its order of 13 October 1970, and we accept that designation as descriptive of the officer appointed by the court. Yet since someone must necessarily be in control of the corporation during the pendency of the appeal, it seems clear that the custodian of the controlling shares will be required to perform not only the passive duties of a stakeholder but also the active duties of one in charge of an estate. (Cf. *Neider* v. *Dardi,* 130 Cal.App.2d 646, 650 [279 P.2d 598].) For this reason we think some of the safeguards attached to a receivership are applicable here. One of these safeguards is the prohibition against the appointment as a receiver of a party, an attorney for a party, an interested person, or a relative of a judge. (Code Civ. Proc., § 566.) We think by analogy this section applies to the appointment of a custodian of controlling shares in a corporation. In such instance the appointment of a disinterested person to act as custodian pending appeal is required—not only to forestall the possibility of impropriety but to avoid the appearance of impropriety. We have concluded that the learned trial court abused its discretion in appointing the attorney of a party as custodial officer for the controlling shares in Custom pending appeal, and accordingly a writ of prohibition will issue to vacate such appointment (*Slinack* v. *Superior Court,* 216 Cal. 99 [13 P.2d 670]) together with a writ of mandate to require the superior court to appoint a disinterested custodial officer for the controlling shares of Custom to abide the order of the reviewing court. When appointed, such custodian will be in charge of the business, operations, and assets of Custom pending the disposition of the appeal, subject, however, to the continuing supervision of the superior court.

*Other Matters*

■ The parties have applied for various measures of provisional relief relating to proceedings pending in the bankruptcy court. We deem it unnecessary and inapposite for this court, or the superior court, to issue writs requiring or prohibiting any party to this action from seeking such relief in the federal courts as it may appear to his interest to pursue. (Code Civ. Proc., § 526; Civ. Code, § 3423; cf. *Atlantic Coast Line RR.* v. *Engineers,* 398 U.S. 281, 285-287 [26 L.Ed.2d 234, 240-241, 90 S.Ct. 1739]; *Ableman* v. *Booth* (1859) 62 U.S. (21 How.) 506 [16 L.Ed. 169].) Once a neutral custodian of the controlling shares of Custom has been appointed to abide the order of the reviewing court, an officer will be in existence with authority to act in the best interest of Custom. Such officer may initiate, abandon, oppose, or support proceedings in other tribunals in such fashion as appears

to him to promote the best interest of his principal. If a bankruptcy court should enter a particular order deemed inappropriate by any party to this litigation the usual remedies within the federal judicial system would be available for use by the party discontented with such an order. Accordingly, we decline to make any order requiring or prohibiting any party in this proceeding from applying or not applying for relief in bankruptcy.

Certain defendants have sought a stay or reduction in the payment of current royalties to Davis commencing 1 July 1970. We see no reason for such a stay. If in fact overpayments of current royalties are made to Davis we think it more probable than not that they will continue to be recoverable by Custom.

■ The four employee-shareholders have sought a writ to guarantee their present salaries and present employment. We see no necessity for such an order, nor do we think it falls within the scope of this litigation. A neutral custodian, answerable to the court for the best interests of Custom, is entitled to consider employment, salary, tenure, etc. of the employee-shareholders from the point of view of the business interest of Custom, and in dealing with these employees he should not be required to take into account their special interest as litigants and shareholders.

Finally, as a condition of the stay of execution of Davis' money judgment we require timely prosecution of the appeal, and we will view with disfavor any application by any party to the appeal to delay the preparation of the record, the briefing of the appeal, or the argument of the appeal, or to depart in any manner from the time schedule for the conduct of appeals set out in California Rules of Court.

The petition for writ of supersedeas to stay execution without bond of the balance of Davis' money judgment against Custom is granted; the petition for writ of prohibition to require the superior court to vacate the appointment of Kurt J. Lewin as custodian is granted; the petition for the writ of mandate to require the superior court to appoint a neutral custodian is granted, all as hereinafter set forth. In other respects the petitions for relief are denied.

*Order and Judgment*

1. That a writ of supersedeas be issued by the clerk of this court, directed to the Superior Court of the State of California, in and for the County of Los Angeles, the clerk of said court, the Sheriff of Los Angeles County, and Allen V. C. Davis and Hydra-Electric Company, and their attorneys of record, staying enforcement of and execution upon, or any proceedings to enforce or execute upon, the money judgment against Custom Component Switches, Inc., entered on 28 September 1970, in Allen V. C. Davis v. Cus-

tom Component Switches, Inc., No. 894 709, in the records of said superior court, until the judgment on appeal becomes final and the remittitur is filed in said superior court or until the further order of this court; provided, however, that said stay shall not prevent the completion of execution upon certificates of deposit aggregating $300,000 heretofore levied upon by the Sheriff of Los Angeles County.

2. That a peremptory writ of mandate be issued by the clerk of this court, directed to the Superior Court of the State of California, in and for the County of Los Angeles, the clerk of said court, and the Sheriff of Los Angeles County, commanding that the writ of execution against Custom Component Switches, Inc., heretofore issued in Action No. 894 709 on or about 30 September 1970, and any levy thereunder, be recalled and quashed, except with respect to the levy upon said certificates of deposit.

3. That a peremptory writ of prohibition be issued by the clerk of this court, directed to the Superior Court of the State of California, in and for the County of Los Angeles, and Kurt J. Lewin, vacating and annulling the order of said superior court, made on or about 13 October 1970, appointing Kurt J. Lewin as custodian of the shares of Custom Component Switches, Inc., previously standing of record in the names of petitioners Goodson and Hannam, together with the voting rights pertaining thereto, and directing Kurt J. Lewin to deposit with the clerk of said court any and all certificates representing said shares and any and all assignments pertaining thereto which are in his possession or control.

4. That a peremptory writ of mandate be issued by the clerk of this court, directed to the Superior Court of the State of California, in and for the County of Los Angeles, commanding said superior court to appoint a duly qualified, disinterested custodian of the shares of Custom Component Switches, Inc. previously standing of record in the names of Goodson and Hannam. Said custodian shall receive custody of said shares of Custom Component Switches, Inc. and the powers of control associated with said shares, and shall succeed to the duties of custodian specified in the order of the superior court entered on or about 16 June 1970, as said order now exists or may be modified hereafter by the superior court in the best interest of all parties in Action No. 894 709, after hearing upon reasonable notice. Said custodian or his successor or successors shall serve during the stay ordered in Paragraph 1 of this Order and Judgment. The compensation of said custodian or his successors and the premium for any bond required shall be paid by Custom Component Switches, Inc., without prejudice, however, to the right of the party or parties prevailing on the appeal to seek reimbursement on behalf of Custom from the parties who do not prevail on appeal.

5. That this Order and Judgment is conditioned upon the following:

(a) Commencing with payments attributable to net profits earned on or after 1 July 1970, Custom Component Switches, Inc., shall make payments to Allen V. C. Davis provided in Paragraph 15 of the judgment of said superior court in Action No. 894 709. Any remaining net profits which in the judgment of the custodian are not required by Custom for working capital or other necessary corporate expenditures, shall be paid to Davis in partial satisfaction of the judgment. In the event the conditons set forth in this subparagraph are not performed, real party in interest Allen V. C. Davis may apply to this court for such relief as may be appropriate.

(b) The appeal shall be prosecuted, the record filed, the briefs filed, and the appeal argued within the minimum periods of time specified in California Rules of Court. Should the appealing parties become delinquent in performing any of the steps associated with the appeal, the real party in interest Allen V. C. Davis may apply to this court for vacation of the stay of execution.

6. That, except as hereinabove provided, the relief sought by the petitions herein is denied without prejudice.

The parties to these proceedings for extraordinary relief shall bear their own costs, without prejudice, however, to the right of the prevailing parties on the appeal to apply for reimbursement of such costs after the appeal has been determined on its merits.

Compton, J., and Alarcon, J.,* concurred.

A petition for a rehearing was denied December 17, 1970, and the petition of the respondents in No. 37319 and the real parties in interest in Nos. 37318, 37346 and 37391 for a hearing by the Supreme Court was denied January 21, 1971.

---

*Assigned by the Chairman of the Judicial Council.