[No. E010207. Fourth Dist., Div. Two. Apr. 16, 1992.]

ROBERT MARKLEY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
ALLEN SAMUELS, Real Party in Interest.

■■■■■■■■■■■■

COUNSEL

Reid & Hellyer, Dan G. McKinney and Steven G. Lee for Petitioners.

No appearance for Respondent.

Michael V. McIntire and Christopher D. McIntire for Real Party in Interest.

OPINION

**TIMLIN, J.**—In this matter we are called upon to decide whether the trial court may, in lieu of requiring a bond or undertaking as a condition of denying a motion to expunge lis pendens, authorize the plaintiff to execute and file a deed of trust on real property, to indemnify defendant for all damages proximately resulting from the denial of expungement, should defendant ultimately prevail in this action. We conclude that such an alternative is not authorized by statute and that the trial court exceeded its powers in making such an order. ■■■■ ■■ ■■ Accordingly, we issue the writ as prayed.[1]

As we determine that the question is one of statutory construction unaffected by the equities or practicalities of this particular case, no detailed recitation of the facts is necessary. In January 1990, plaintiff Allen Samuels (hereinafter Samuels) sold a large parcel of property in Adelanto to defendants Robert and Denise Markley and Charles and Betty Smith.[2] (Hereinafter, Markley shall refer to petitioners Smith and Markley as a group; where the individual is meant, his or her full name will be used.) It is Samuels's contention that Robert Markley and Daniel Tate had made misrepresentations to him concerning the value of the property while acting in a fiduciary capacity as his real estate agents. In April 1991, Samuels sued to rescind the

[1]In his answer and opposition filed on December 20, 1991, real party Allen Samuels for the first time brought before this court the argument that the trial court abused its discretion in fixing the amount of bond. Under Code of Civil Procedure section 409.4, an aggrieved party has 20 days from the date of service of notice of the order granting or denying a motion to expunge in which to seek review by filing a petition for a writ of mandate. In this case, although the record does not indicate when notice was served, the final order was orally made on September 5 and a formal order was signed on October 9, 1991; Markley filed this petition on October 16. Even if we construed the answer as a petition, it would appear to have been untimely; in any event, as Samuels did not file his own petition, we find his presentation of additional issues inappropriate and decline to reach them.

[2]The actual conveyance by Samuels was to Pacific Financial Exchange Corporation, which then conveyed to the intended eventual grantees. This procedure was allegedly due to Markley's insistence on arranging a tax-free or tax-deferred exchange.

sale, and in conjunction therewith filed and recorded a notice of lis pendens pursuant to Code of Civil Procedure section 409, subdivision (a).[3, 4]

Markley moved to expunge, arguing that the action did not involve real property and was not prosecuted in good faith and for a proper purpose. (See § 409.1, subds. (a) and (b).) In the alternative, petitioners asked the court to require Samuels to post an undertaking pursuant to section 409.1, subdivision (b), if expungement was denied; petitioners also offered to post an undertaking themselves under section 409.2.[5]

At the first hearing, on June 24, 1991, the court denied the motion to expunge but ordered Samuels to post an undertaking pursuant to section 409.1 in the amount of $2 million. Samuels moved for reconsideration or, in the alternative, clarification of the order setting the type and amount of the undertaking, asserting that he believed that Markley, through counsel, had agreed that Samuels, in lieu of posting a bond, could encumber real property in his favor, and that Markley now refused to accept this.[6] Following a hearing on July 8, 1991, however, the court entered an order denying the motion to expunge, and explicitly required Samuels to post an undertaking in the amount of $2 million within 30 days of July 8, 1991.

A second motion for reconsideration was then filed by Samuels, in which he sought a change in the order on two grounds: first, that defendants'

---

[3]In the original motion to expunge, Markley argued that rescission could not be sought because the representations were allegedly made by Tate, not the purchasers. Although the complaint alleges only Tate's representations Samuels's opposition made it clear that he claimed that Robert Markley had also made express misrepresentations to him. We assume for the purposes of this opinion that the issue of rescission is adequately presented.

[4]All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

[5]Section 409.2 permits the court to order the party requesting expungement to post an undertaking if the court is satisfied that plaintiff's claims can be adequately compensated in money. However, the text of petitioner's motion was based primarily on section 409.1, which does not require the finding of adequate monetary compensation, but permits an undertaking to be required of the party prevailing on the motion to secure indemnification for all damages that proximately result from the failure to expunge the lis pendens, which the losing party on the motion may incur if he or she ultimately prevails in the action.

[6]The reporter's transcript from June 24 does not bear out Samuels's contention. Markley offered, if expungement was granted, to place into an escrow a promissory note for approximately $2 million which would be received by Markley on a proposed pending sale of the disputed property. Counsel for Samuels indicated that his client was unwilling to accept the deposit of the note only, and not the cash to be received; he suggested that the motion be denied and that he be permitted to pledge adjacent property in lieu of an undertaking. The court responded "I don't know" to this; counsel for Markley argued that Samuels "should have no problem getting a bond using that property as collateral." Finally, counsel for Samuels said "If the Court will give us fifteen days to post the undertaking, we can either resolve that or get with counsel and come to an agreement." It is clear from these exchanges that no court order authorizing the substitute security was made, and that defendants never agreed to such an procedure. (See discussion re waiver, *infra*.)

probable damages due to any wrongful filing of the lis pendens did not approach the $2 million figure, and second, that it had proved impossible for him to obtain the required bond. In the latter context, Samuels stated that his discussions with bonding companies had elicited the information that the companies would not issue a bond without a letter of credit in the full amount of the bond; banks would not issue a letter of credit without a full cash deposit in the amount of the letter of credit. Thus, to obtain a $2 million bond, Samuels would have had to deposit the cash sum of $2 million in a bank in order to satisfy the requirements of the bank and the bonding company. Not surprisingly, Samuels was unable to do so.

However, Samuels also presented substantial evidence that a 320-acre parcel of property still owned by him and adjacent to the disputed property had a fair market value of up to $3,465,000 and was subject to no prior encumbrances.[7] Markley vigorously opposed both the request to reduce the bond and the request to substitute an encumbrance on real property.

At a hearing on August 20, 1991, the court indicated that it "had given this case a great deal of thought, and the court continues to feel that the lis pendens is proper and that there needs to be a security in the area of about two million dollars. [¶] But to cut right down to it, I don't see why the adjoining property can't be posted in lieu of the bond for the security . . . I do feel the court has the inherent authority to allow the property to serve in lieu of a cash bond." After some discussion, the court directed that this be accomplished by the execution of a first deed of trust on the property in favor of the clerk of the superior court, as beneficiary, and the filing with the court of a policy of title insurance in the amount of $2 million showing the property to be encumbered as free of "all debts and encumbrances as of the date of recordation of the Deed of Trust." The deed of trust was to be recorded before September 5, 1991.

At a hearing involving further disputes over the procedures, on September 5, 1991, the court orally ordered Samuels to file with the court clerk a recorded deed of trust designating the clerk of the court as beneficiary, with Samuels's authorization for deposit of the deed of trust in lieu of undertaking pursuant to section 995.710, subdivision (c). On October 9, 1991, a formal written order to the same effect was signed and filed.

---

[7]Other letter appraisals, apparently filed by Markley in opposition, valued the parcel at $1,920,000 and "in excess of $2,000,000." Both of these appraisals indicated that the parcel owned by Samuels was appreciating in value.

## DISCUSSION

### A.

■ The trial court's written order of October 9, 1991, suggests that it relied on section 995.710, subdivision (c), as authorizing the deposit of a trust deed in lieu of an undertaking. Samuels does not urge that the trial court was correct in this respect, and it is clear that the order cannot be upheld under that statutory authority.

Section 995.710 permits a party who is required to post a bond to make a deposit in lieu of bond, and specifies the assets which are acceptable as such a deposit. Thus, under subdivision (a), "any of the following" may be deposited: cash, bearer bonds or notes of the United States or California, certificates of deposit, assigned savings accounts, and investment certificates or share accounts issued by savings and loan associations or credit unions. Subdivision (c) merely provides that the deposit "shall be accompanied by an agreement executed by the principal authorizing the officer [i.e., the appropriate custodial officer; see section 995.160] to collect, sell, or otherwise apply the deposit to enforce the liability of the principal on the deposit." That subdivision does not purport to expand the list of acceptable deposits in subdivision (a); it only provides that the deposits must be accompanied by the authority to dispose of them on behalf of the beneficiary. Nothing in the language of subdivision (a) suggests that its list is subject to judicial expansion, and we deem the maxim *inclusio unius est exclusio alterius* to be applicable. Thus, the court's order was not justified under the cited statutory provision.

### B.

Section 409.1, subdivision (b), provides in part that "[t]he court, as a condition of granting or denying the motion to expunge, may require that the party prevailing upon the motion give the other party an undertaking of the nature, and in the amount, as shall be fixed by the court . . . ." ■ Samuels argues that by authorizing the court to determine "the nature" of the undertaking, the Legislature intended to allow the court to approve creative methods of providing an undertaking. He points out that section 995.020, subdivision (a), of the Bond and Undertaking Law (§ 995.010 et seq.) specifies that the law's rules apply to all bonds and undertakings given pursuant to statute "except to the extent the statute prescribes a different rule or is inconsistent." In Samuels's view, section 409.1, by permitting the trial court to determine "the nature" of the undertaking, is inconsistent with the Bond and Undertaking Law and therefore prevails.

We cannot accept this argument, which is supported by no direct authority. Samuels relies on *Howden-Goetzl* v. *Superior Court* (1970) 7 Cal.App.3d 135, 139 [86 Cal.Rptr. 323], for the principle that the Legislature intended to confer substantial discretion on the trial court concerning the determination of the type of undertaking required; however, that case dealt only with the calculation of the *amount* of an undertaking ordered under section 409.2. It provides no authority for the assertion that the court has discretion to approve novel arrangements not qualifying as "undertakings" under the Bond and Undertaking Law.

Samuels also points out that the California Law Revision Commission comment to section 995.020 expressly notes that its provisions "are not exclusive, but are supplemented by the general provisions governing all bonds and undertakings, both common-law and statutory. See *e.g.*, Civil Code §§ 2787-2855 (suretyship)." However, the same comment makes clear that its provisions do apply to all *statutory* bonds and undertakings, even though other provisions may impose additional requirements. As this court has previously pointed out, the Law Revision Commission also explained that "[t]he rules applicable to such matters as the manner of execution of a bond or undertaking, the number or qualifications of sureties, the giving of a new or additional bond or undertaking if the original bond or undertaking becomes insufficient, the limitation on liability of a surety to the amount of the bond or undertaking, *and the ability to give a cash or equivalent deposit in lieu of a bond or undertaking, are the same for all bonds and undertakings. Repetition of such procedural rules in every statute that provides for a bond or undertaking is not only wasteful and adds to the complexity and length of the statutes, but also creates the likelihood of inconsistent wording and interpretation where the rules should be the same.*"[8] (See *Milo Equipment Corp.* v. *Elsinore Valley Mun. Water Dist.* (1988) 205 Cal.App.3d 1282, 1286 [253 Cal.Rptr. 126], italics added.) Thus, the Bond and Undertaking Law applies to undertakings posted in connection with proceedings to expunge lis pendens, unless the court's power to prescribe "the nature" of the undertaking creates one or both of the exceptions provided in section 995.020, subdivision (a).

Given the language of the Bond and Undertaking Law, the explanation by the Law Revision Commission, and the absence of any contrary decisional guidance or legislative history, we hold that it does not. The first additional factor in support of this conclusion is that neither the statutes nor logic suggests any reason why an undertaking required as a condition of expungement or nonexpungement of a lis pendens should be subject to a looser

---

[8]This case demonstrates the need for such consistency, as well as the extent to which the revisions failed to secure it.

definition than one required as an adjunct to the granting of a preliminary injunction (§ 529), to the issuance of letters testamentary or of administration (Prob. Code, § 8480), to obtain or release a prejudgment writ of attachment (§§ 489.210, 489.310), or to be permitted to proceed after one has been found to be a vexatious litigant (§ 391.3).[9] ▮ A bond or undertaking is required for the purpose of protecting the opposing party should it be finally determined, after trial on the merits, that a restriction on one party's freedom of activity was improperly imposed or lifted and resulted in monetary damages. Section 409.1 is intended to provide monetary compensation for any damages which proximately result from the expungement, or nonexpungement, of the lis pendens. (See *Elder* v. *Carlisle Ins. Co.* (1987) 193 Cal.App.3d 1313, 1319 [238 Cal.Rptr. 897].) ▮ An expeditious, legally unambiguous method of successfully enforcing such compensation is as necessary in this context as any other, and we will not presume that the Legislature intended to give any lesser protection to those on the losing end of a motion to expunge than to those otherwise entitled to require the other party to give an undertaking.

The second support for our conclusion is the use, in section 409.1, of the term "undertaking." Section 995.190 defines "undertaking" as "a surety, indemnity, fiduciary, or like undertaking executed by the sureties alone." The comment explains that "[t]he only difference between a bond and undertaking is that an undertaking is executed by the sureties and not the principal." (See also § 995.140, defining "bond" as a "surety, indemnity, fiduciary, or like bond . . . or like undertaking.")[10] Under section 995.140, "bond" includes "undertaking," and under section 995.210, bonds and undertakings, as the terms are used in the divers statutes, are interchangeable unless specific language provides otherwise.

Thus, "undertaking" has a specific statutory definition, which in our view is not subject to substantial alteration by any power given to the trial court to delineate its "nature." Either a bond or an undertaking may be enforced against the surety by a civil action. (§ 996.430.) The resulting judgment may be collected from any assets, in the same manner as any other civil judgment for money. These protections and rights are absent in the case at bar, and the filing of a deed of trust is not the giving of an "undertaking."

We conclude that section 409.1 is not inconsistent with the provisions of the Bond and Undertaking Law. Nor does it prescribe or authorize any different rule or procedure.

---

[9]If it be argued that the nature of disputes over real property justifies different treatment, we would note that injunctions may also touch upon the use or disposal of real property, and that an attachment may hinder disposal or other transfers.

[10]We express no opinion on this tautological definition of "bond."

## C.

■ Samuels also argues that the court's order was proper because it is not reasonably possible for him to obtain a bond or undertaking as defined by statute. On the record before us, we find this argument to have considerable force. However, we are bound by the terms of the statutes, and therefore reject it.

As described above, Samuels presented evidence to the trial court which would support a finding that it would be extremely difficult for him to obtain a bond, and that to do so might require a considerable financial sacrifice.[11] Samuels observes that section 995.240 permits the court in any case to "waive" a statutory provision for a bond and make "such orders as may be appropriate as if the bond were given, *if the court determines that the principal is unable to give the bond because the principal is indigent and unable to obtain sufficient sureties . . . ."*[12] Although Samuels cannot claim to be indigent, and therefore does not fall within the express scope of the statute, he argues that this provision merely reflects the common law power of the court to waive bond where equity requires. (See *Conover* v. *Hall* (1974) 11 Cal.3d 842, 851-52 [114 Cal.Rptr. 642, 523 P.2d 682] [injunction bond]; *Martin* v. *Superior Court* (1917) 176 Cal. 289, 296-97 [168 P. 135]; and *Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 654 [94 Cal.Rptr. 398, 484 P.2d 70] [filing and litigation fees]; see also Gov. Code § 68511.3, governing proceedings in forma pauperis.)[13]

Although Samuels relies on *Conover* v. *Hall* and *Ferguson* v. *Keays, supra,* as support for the principle that courts have the power to dispense with undertaking requirements such as that involved here where the result would be, in Samuels's words, "insolvency, forfeiture of the case, or other inequitable result," we cannot read the cases so broadly. The authority to permit a

---

[11]Samuels might be able to borrow the necessary amount of cash by mortgaging his property, thus incurring substantial interest costs; alternatively, he might be able to sell the remaining parcel outright, at the risk of not obtaining the best price. We express no opinion on the level of detriment which reaches the legal levels of impracticability or impossibility; we assume, solely for the purposes of this opinion, that Samuels made a showing adequate to justify the court in exercising whatever power it had (which, as we conclude below, was none) to authorize a substitute form of security or undertaking.

[12]We have some doubt whether section 995.240 applies to our situation because we construe "provision" to refer to a statutory requirement for a bond. Section 409.1 does not mandate the filing of a bond but gives discretion to the trial court to require a bond, after it has either granted or denied a motion to expunge. For the purpose of our textual discussion, however, we assume "provision" includes a statute allowing a bond at the discretion of the court.

[13]In *Martin* v. *Superior Court, supra,* at page 294, the court quoted Blackstone's Commentaries for the historical perspective that although indigents were permitted to sue without the paying of fees, ". . . it was formerly usual to give such paupers, if nonsuited, their election either to be whipped or pay the costs."

litigant to proceed in forma pauperis was "intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action" on account of poverty. (*Adkins* v. *E.I. Du Pont de Nemours & Co.* (1948) 335 U.S. 331, 342 [93 L.Ed. 43, 50, 69 S.Ct. 85].) While a litigant need not render himself absolutely destitute before being entitled to the protections of the common law or statutory procedures (*Adkins, supra,* at p. 342 [93 L.Ed.2d at p. 50]), we do not think that these remedial practices can be extended to cure mere inconveniences or hardships, in the absence of statutory authority. Strict adherence to the bonding requirements does not work a forfeiture here; at worst, Samuels may be compelled to lose the benefit provided by the lis pendens—i.e., the strong probability that a subject property will not be conveyed or encumbered pending final resolution of the attendant lawsuit—but he will not be compelled to abandon his suit for damages. Thus, we cannot equate Samuels with an indigent entitled to lenience either under section 995.240 or the common law.

We invited the parties to address the question of the applicability of those cases which establish the power of an appellate court to stay a judgment pending appeal even though the statutes provide that a stay may be had only upon the posting of a bond. Upon consideration, we conclude that these cases do not support the order made here.

In *Davis* v. *Custom Component Switches, Inc.* (1970) 13 Cal.App.3d 21, 27 [91 Cal.Rptr. 181], and *Estate of Murphy* (1971) 16 Cal.App.3d 564, 568 [94 Cal.Rptr. 141] the appellants persuasively demonstrated their practical inability to obtain appeal bonds to stay the judgments pursuant to sections 917.1 and 917.9. In both cases, the appellate court effectively waived the statutory bond requirement and stayed the judgments pending appeal.

In each case, the appellate court relied upon the potentially irreparable harm to the appellants if a stay was not imposed. In *Davis*, the corporate appellant would be compelled to liquidate itself, to the great detriment of minority shareholders, and in *Estate of Murphy*, if distribution of trust assets were made pursuant to the judgment, it appeared highly unlikely that the beneficiary appellants would be able to recover them. In neither case was there a serious threat of harm to the respondent if the judgment were stayed, as the corporate defendant in *Davis* was operating profitably and a delay of distribution in *Estate of Murphy* would have no substantially detrimental effect.

In this case, neither factor applies in favor of Samuels. Having freely sold the real property, he cannot claim any genuinely specific interest in it as opposed to financial compensation for its alleged true value. (See *Trapasso*

v. *Superior Court* (1977) 73 Cal.App.3d 561, 568 [140 Cal.Rptr. 820].) Thus, if the lis pendens is expunged and Markley transfers the property, Samuels can be adequately compensated in money damages.[14] (See Civ. Code, § 3343.) On the other hand, the possible loss to Markley if the property remains subject to the lis pendens is substantial, as a sale of the property apparently has been pending, or is highly probable, and it cannot be assumed that property values will remain stable or increase if this opportunity is lost.

However, the critical factor distinguishing *Davis* and *Estate of Murphy* is the effect of section 923, which allows an appellate court to take *any appropriate action* "to preserve the status quo, the effectiveness of the judgment subsequently to be entered [i.e., by the appellate court] or otherwise in aid of its jurisdiction." Both courts relied on this statute to overcome the argument that sections 917.1 and 917.9 mandated that no judgment could be stayed unless a bond were posted. We have not been directed to any comparable sweeping grant of authority empowering the trial court to modify or disregard the statutory requirements as to undertakings with respect to the expungement of a lis pendens, and our own research has disclosed none. We determine that the trial court had no authority, inherent or otherwise, to disregard the provisions of section 409.1 and the Bond and Undertaking Law.[15]

## D.

Finally, Samuels asserts that Markley waived any right to object to the substitute form of undertaking as allowed by the trial court. He claims that *Markley* proposed to post alternative security, and failed to object when Samuels suggested an undertaking not prescribed by statute. These contentions are without substantial merit.

In the motion to expunge, Markley pointed out that even if defendants did not prevail on their motion, the court had the power to expunge the lis pendens pursuant to section 409.2, if the statutory conditions were met and

---

[14]The declaration submitted by Samuels in opposition to the motion to expunge indicates that he was at least somewhat anxious to sell the property in 1989, and that his only concern was to obtain its full value.

[15]Under section 923, arguably this court would have the power to relieve Samuels from the bond requirement should he seek to maintain the lis pendens during an appeal from an adverse judgment. It may therefore be argued that we can, and should, exercise a similar power here. However, while it is accepted that an appellate court has the power to issue a temporary stay of proceedings to maintain the status quo pending the determination of a petition for extraordinary relief (see Cal. Rules of Court, rule 56(c)), it may be doubted that the broad empowerment granted by section 923, as interpreted in *Davis* and *Estate of Murphy*, should be extended to permit a widespread impairment of the obligations and rights provided by the Legislature.

Markley posted an undertaking. Thus, as an alternative to the more desirable expungement under section 409.1 (which might not carry the consequence that Markley be required to post a bond), Markley invited the court to set the amount of the *undertaking* under section 409.2. No mention was made in the motion of security, other than an undertaking. In discussing Samuels's potential responsibility to post an undertaking as a condition of denial of the motion, Markley again requested that an *undertaking* be required.

At the hearing on the motion to expunge, as Samuels asserts, counsel for Markley offered to place part of the proceeds from the pending sale of the property (a promissory note from the prospective purchasers) into escrow in order to have the lis pendens expunged. However, it was *Samuels* who had raised the possibility that such a procedure would be acceptable to him, by suggesting it in his opposition to the motion to expunge. Thus, Markley's offer at the hearing was no more than a response to Samuels's own proposal, and cannot be deemed a binding agreement that a nonstatutory form of undertaking would be acceptable. We also note that it was then Samuels's counsel who expressly asked the court if it were "willing to consider an undertaking of another kind," referring to Samuels's adjacent parcel. In response, Markley's attorney remarked pointedly (if inaccurately) that if the property were worth what Samuels claimed, "[t]hey should have no problem getting a bond using that property as collateral." There was no waiver by Markley of their entitlement to an undertaking as prescribed by statute.

As set forth above, we are not unmindful of the hardships placed upon a party who finds it virtually impossible to comply with the undertaking requirements laid down by a Legislature which may have been either unaware of then-standard commercial practices of lenders and sureties, or, not being equipped with perfect foresight, unable to predict that alterations in such practices would make the statutory scheme unworkable and wreak havoc on hapless litigants. And while, as discussed above, we respect the legislative intent to give a convenient and unambiguous monetary protection to the party in whose favor a bond or undertaking is required, we are compelled to note a certain illogic in the statutory provisions which permit a party to satisfy the bond requirements by the use of personal sureties, who may qualify on the basis of net assets of any kind, real or personal. Thus, although the Bond and Undertaking Law does not permit Samuels to transfer real property in trust to satisfy the requirement of an undertaking, he could do so by obtaining personal sureties who owned similar real property—thus placing Markley in a similarly burdensome position if enforcement became

necessary.[16] However, these choices are for the Legislature, and we may not impose an unreasonable construction on language which is clear. (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

In conclusion, we hold that the trial court exceeded its authority in allowing Samuels to execute a first deed of trust on certain property owned by him in favor of the court clerk, along with an authorization for enforcement, and then to allow the filing of that deed of trust and authorization, as recorded, with the clerk as an undertaking under section 409.1. We further agree that Markley's petition must be granted as follows:

Let a peremptory writ of mandate issue, directing the superior court 1) to vacate its order denying the motion to expunge insofar, as a condition of such denial, it authorized Samuels to indemnify Markley for all damages resulting from the denial of expungement, if Markley finally prevails, by the execution of a first deed of trust in lieu of an undertaking, and 2) to enter a new order conditioning its denial of the motion upon Samuels's giving Markley an undertaking in compliance with the Bond and Undertaking Law and the views expressed in this opinion. This order shall be without prejudice to the trial court's conducting further proceedings, if appropriate, with respect to whether the motion should be granted under section 409.1 if Samuels is unable to give the required undertaking, and, if so, whether Markley should be required to post an undertaking pursuant to that statute.

This decision shall be final as to this court immediately. (See Cal. Rules of Court, rule 24(d).)

Hollenhorst, Acting P. J., and McKinster, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 10, 1992.

---

[16]However, as we noted above, the liability of the personal sureties could be enforced against any assets, thus providing some protection against unrealistic evaluations of specific property or changes in economic conditions.